# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Keyle Howard and Barbara Bates,
individually and on behalf of
all others similarly situated,

        Plaintiffs,

v.                                   Case No. 15-9918-JWL

Centrinex, LLC; Maximus, Inc.;
TDB Communications, Inc.; and
Health Net, Inc. d/b/a Health Net
Veterans, LLC d/b/a Health Net
Federal Services, LLC,

        Defendants.

## <u>MEMORANDUM & ORDER</u>

Plaintiffs, individually and on behalf of others similarly situated, filed this wage and hour suit against defendants, alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Specifically, plaintiffs, former employees who worked at defendants' call center in Lenexa, Kansas, allege that defendants required its call center employees to perform off-the-clock pre-shift work and off-the-clock post-shift work. This matter is presently before the court on plaintiffs' motion for conditional class certification under § 216(b) of the FLSA and for the issuance of court-supervised notice.  As set forth in more detail below, the motion is granted in part and denied in part.

*Standard*

Section 216(b) of the Fair Labor Standards Act of 1938 provides for an opt-in collective action where the complaining employees are "similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of § 216(b). *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." *See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). For conditional certification at the "notice stage," a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). The standard for certification at the notice stage, then, is a lenient one. *See id* . at 1103. At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are "similarly situated" using a stricter standard. *Id.* at 1102–03. During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; and fairness and procedural considerations. *Id.* at 1103.

The parties here do not dispute that the court should apply the lenient "notice stage" standard to plaintiffs' motion. Thus, the court looks to the "substantial allegations" in plaintiffs'

complaint as supplemented by plaintiffs' affidavits and the affidavit of proposed opt-in plaintiff Shavonte Jackson.

*Background*

As alleged by plaintiffs in their complaint, Congress enacted the Veterans Access, Choice, and Accountability Act ("VACAA") of 2014 in an effort to expand the number of options United States military veterans have for receiving care and to ensure that veterans have timely access to high-quality care. Pursuant to the VACAA, the United States Department of Veterans Affairs has implemented the Veterans Choice Program, a program that it intended to provide primary care, inpatient and outpatient specialty care, and mental health care to eligible veterans when a local VA medical center cannot provide the services due to a lack of available specialists, long wait times, or extraordinary distance from the veteran's home. Among the services provided to veterans under the Veterans Choice Program is the option for eligible veterans to call in and have a customer service representative assist with scheduling appointments with health care providers.

According to plaintiffs, the VA awarded defendant Health Net, Inc. several federal contracts in 2014 whereby Health Net, Inc. is paid to implement and administer the Veterans Choice Program in a number of regions throughout the United States. Defendant Maximus, Inc. provides management, technology and business oversight services to a variety of government programs, including the Veterans Choice Program. Defendant TDB Communications, Inc. provides staffing, records management, on-site project management, payroll services and executive consulting services on government programs, including the Veterans Choice Program.

In 2015, defendants Health Net, Inc.; Maximus, Inc.; and TDB Communications, Inc. contracted with defendant Centrinex, Inc. to provide call center services relating to the Veterans Choice Program.  Centrinex, Inc. is a privately held company that operates a call center in Lenexa, Kansas and employs hundreds of customer service representatives at that location.[1]

Plaintiffs Keyle Howard and Barbara Bates both worked as call center employees assigned to the Veterans Choice Program in Centrinex's Lenexa facility from May 2015 to June 2015.  According to plaintiffs, defendants required call center employees working on the Veterans Choice Program to perform pre-shift off-the-clock work, including turning on computers; starting up various computer programs; logging into various computer programs; reading e-mails and training materials; and clocking into a timekeeping system by visiting a specific website.  The timekeeping system does not capture the time employees spend performing tasks prior to the time they "clock in" to the system.  Plaintiffs further allege that in the event that an employee's daily time record reflects more than 8 hours of work, defendants systematically and uniformly alter the time record to reflect only 8 hours of work.  According to plaintiffs, Veterans Choice call center employees must be ready to receive calls and to process customer service requests at their assigned scheduled start time such that these preparatory but indispensable tasks must be completed before the scheduled start time.  Plaintiffs and Ms. Jackson aver that they were required to arrive at the call center to begin pre-shift tasks anywhere from 30 minutes to 90 minutes prior to the scheduled start time and were not paid for this time.

---

[1] The call center in Lenexa is also used to service, renew and retain loan customers for the payday lending industry.  This case, however, concerns only those call center employees who work or worked in the Lenexa, Kansas call center on the Veterans Choice Program.

Plaintiffs allege that the timekeeping system similarly fails to capture time spent for tasks completed at the end of a call center employee's shift, including turning off and logging out of computers and various computer programs. According to plaintiffs, they are also required to spend additional time completing paperwork related to customer service requests, scheduling appointments with health care providers, continuing and concluding incoming phone calls, and processing customer service requests. To the extent these tasks push an employee over an 8-hour work day, defendants shave time off the employee's time record to reflect only 8 hours of work.

*Discussion*

In their motion for conditional certification of this action as a collective action, plaintiffs seek conditional certification on behalf of "All hourly-paid call center workers at Defendants' Lenexa, Kansas call center who, at any point since December 17, 2012, have handled telephone calls on behalf of the Veterans Choice Program." Plaintiffs assert that they are similarly situated to each other and to potential opt-in plaintiffs in that all were required to perform pre- and post-shift work without compensation and were subjected to the same "time shaving" practices uniformly employed by defendants. Defendants oppose conditional certification of the class for two reasons—plaintiffs' allegations are not "substantial" and plaintiffs are not "similarly situated." In the alternative, defendants contend that certification should be limited to "hourly-paid call center employees making calls to and receiving calls from participants on behalf of the Veterans Choice Program while working at the Lenexa, Kansas Centrinex Call Center, at any point from May 11, 2015 to December 31, 2015."

5

In support of their argument that plaintiffs' allegations are not substantial, defendants highlight that Ms. Howard worked for defendants for only 21 days, after which she was terminated for cause and that Ms. Bates worked for defendants for only 30 days, after which she was terminated for "failing to be a good fit."  Ms. Jackson worked for defendants for almost six months until, according to defendants, she was terminated for cause.  Defendants suggest that because plaintiffs were all "short time" employees, they lack the factual knowledge to support their "conclusory" allegations.  Defendants further contend that plaintiffs lack credibility because defendants terminated their employment for cause and because their affidavits are "cookie cutter" in substance.  These arguments against conditional certification are rejected. The length of time that each plaintiff worked for defendants is not material to the motion— plaintiffs clearly allege that, during their employment, they were required to perform pre- and post-shift work without compensation and that defendants routinely shaved time off their daily time records.  Plaintiffs do not need to establish that defendants required off-the-clock work over a certain period of time.  It is sufficient that plaintiffs have alleged that defendants failed to compensate plaintiffs for all hours worked in excess of 40 hours during one or more workweeks and that defendants did so pursuant to a common policy.  Defendants' suggestion that plaintiffs lack credibility or have an axe to grind because they were fired is similarly unpersuasive.  The court simply cannot make credibility assessment on a motion for conditional certification. *Briggs v. PNC Fin. Servs. Group, Inc.*, 2016 WL 1043429, at *5 (N.D. Ill. Mar. 16, 2016) (on motion for conditional certification, rejecting the defendant's attacks on the plaintiffs' credibility, including arguments that affidavits were "cookie cutter" affidavits and that plaintiffs worked for defendant for a short period of time).

6

Defendants also contend that plaintiffs' allegations are not "substantial" because plaintiffs have come forward with no evidence that other employees were required to perform pre- and post-shift work without compensation. The argument fails. Plaintiffs specifically aver that, based on their experiences and observations at the call center, other employees were required to perform off-the-clock work. Plaintiffs, then, have provided evidence of a factual nexus between the manner in which defendants' alleged policy affected plaintiffs and the manner in which it affected other employees. No more is required at this stage and defendants' suggestion that plaintiffs must submit evidence from these "other employees" or identify those employees is not supported by case law. *Salmans v. Byron Udell & Assocs., Inc*., 2013 WL 707992, at *4 (N.D. Ill. Feb. 26, 2013) (plaintiffs' testimony about their own observations of other potential class members was sufficient to satisfy lenient standard for conditional certification). Moreover, based on the nature of the alleged unlawful policy described by plaintiffs, it is reasonable to infer that plaintiffs likely observed or came to learn through first-hand experience that other employees completed a variety of tasks before "clocking in" on the system and after "clocking out" on the system. *See Campeau v. NeuroScience, Inc*., 86 F. Supp. 3d 912, 917-18 (W.D. Wis. 2015) (allowing conditional certification of EPA claim based on the theory that personal knowledge includes reasonable inferences about the treatment of one's co-workers based on observations or other experience); *Creely v. HCR ManorCare, Inc*., 789 F. Supp. 2d 819, 836-37 (N.D. Ohio 2011) (granting conditional certification despite defendant's argument that plaintiffs failed to show specific knowledge of other employees' experiences; plaintiffs were not required "to present some additional, unspecified number of affected employees in order to proceed to conditional certification").

Defendants also oppose conditional certification on the grounds that plaintiffs and Ms. Jackson are not similarly situated to each other.  According to defendants, Ms. Howard was employed as a non-exempt Quality Analyst; Ms. Bates was employed as an exempt Supervisor; and Ms. Jackson was employed as a non-exempt Customer Service Representative.[2]  Relying on *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661 (D. Kan. 2004), defendants contend that certification is inappropriate because plaintiffs' jobs and job duties varied greatly and they cannot represent a class of employees to which they do not belong.  Defendants' reliance on Stubbs is misplaced.  Stubbs was a misclassification case such that plaintiff's particular job and job duties were critical to the issue of whether that plaintiff was properly classified as exempt or non-exempt for overtime purposes.  *See id.* at 665-66 (plaintiff, who held only the position of second assistant manager, could not represent first assistant managers in the absence of evidence that first assistant managers held job duties similar to his duties).  The primary issue in Stubbs, then, was the nature of the duties of the defendant's various managers and whether those managers were, in fact, performing non-exempt work.  *See id.* at 663.  By contrast, plaintiffs have not asserted a misclassification claim but have asserted a claim that call center employees working on the Veterans Choice Program—regardless of their particular job duties or titles— were uniformly required to perform pre- and post-shift work without compensation and were uniformly required to keep track of their time on a web-based timekeeping system that did not capture all hours worked.  They also assert that all call center employees were subject to defendants' time-shaving policy.

---

[2] Ms. Bates avers that she was paid on a hourly basis as a non-exempt employee.  While defendants contend that Ms. Bates was an exempt employee, the court does not resolve these types of factual disputes at this stage.

It may be true, as defendants insist, that certain tasks that plaintiffs assert they were required to perform off-the-clock are not indispensable to that plaintiff's particular job. Defendants, for example, contend that Ms. Howard may have had to turn on her computer and open various applications prior to her shift, but that those tasks were not indispensable to her job as a Quality Analyst. According to defendants, even if those tasks were necessary to field calls and process customer service requests, Ms. Howard did not field calls or process such requests. Ms. Howard, however, asserts that she did field calls and process customer service requests, regardless of her job title, and that preliminary tasks such as starting her computer and opening applications were also necessary for her to monitor the calls of other employees for quality assurance purposes. Moreover, plaintiffs' proposed class is not limited to employees who "fielded" calls but includes employees who "handled" telephone calls on behalf of the Veterans Choice Program. Plaintiffs' allegations are sufficient for notice purposes to demonstrate that Ms. Howard handled calls in connection with the program and that she was not paid for pre-shift and post-shift tasks integral to her job. For this reason, the court also declines defendants' suggestion that the court, to the extent it grants conditional certification, should limit the class to employees "making calls to and receiving calls from participants" in the Veterans Choice Program. Plaintiffs' allegations support the broader class that they describe—a class that includes employees who "handled" calls for the Program.

Lastly, the court turns to defendants' argument that any class that is conditionally certified should be limited to those employees who worked at the call center on the Veterans Choice Program "from May 11, 2015 to December 31, 2015" rather than reaching back to December 17, 2012. Plaintiffs assert that they selected the December 17, 2012 date because that

date is three years prior to the filing of their complaint.  Defendants assert, without any citation to the record or any evidence, that the Veterans Choice Program did not come into existence at the Lenexa call center facility until May 11, 2015 and that the program subsequently expired on December 31, 2015.  Without any evidence on the issue, the court rejects defendants' proposal to limit the look-back period from May 11, 2015 to December 31, 2015.  The court, however, does agree with defendants that the maximum reach of the limitations period for any willful violation of the FLSA would extend back only three years from the date of this order rather than from the date of the filing of the complaint.  *See, e.g., Clayton v. Velociti, Inc.*, 2009 WL 304190, at *2 (D. Kan. Feb. 9, 2009).

*Proposed Notice*

In light of the court's conclusion that this action should be conditionally certified for purpose of notifying potential members of the class. the court turns to the form and substance of the notice to potential class members.  Toward that end, plaintiffs have submitted a proposed notice and a proposed opt-in consent form.  Defendants have raised several objections to the proposed notice, including that the notice fails to adequately describe the defenses asserted by defendants; fails to adequately inform potential class member of their duties; omits information regarding counsel for defendants; provides for a notice period that is too long; and unnecessarily calls for defendants to provide plaintiffs with e-mail addresses and social security numbers for all putative class members.

In their reply brief, plaintiffs request that the court deny defendants' objections without prejudice to reasserting those objections after the parties have had an opportunity to meet and

confer in good faith in an attempt to reach agreement on the form and substance of the notice. As the parties highlight, the court has frequently utilized this procedure in the other cases and will do so here in the hopes that the parties will be able to resolve most if not all of defendants' concerns about the notice. The parties, then, are directed to meet and confer about the form and substance of the notice and, if an agreement is reached, to submit the proposed notice to the court for approval no later than Monday, May 9, 2016. If the parties are unable to reach an agreement, then plaintiffs shall file a motion no later than Monday, May 9, 2016 seeking approval of their proposed notice. Defendants shall then file their objections to plaintiffs' proposed notice and submit an alternate proposed notice no later than Friday, May 20, 2016.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for conditional certification and for the issuance of court-supervised notice (doc. 9) is granted in part and denied in part as described herein.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties are directed to meet and confer about the form and substance of the notice and, if an agreement is reached, to submit the proposed notice to the court for approval no later than **Monday, May 9, 2016**. If the parties are unable to reach an agreement, then plaintiffs shall file a motion no later than **Monday, May 9, 2016** seeking approval of their proposed notice. Defendants shall then file their objections to plaintiffs' proposed notice and submit an alternate proposed notice no later than **Friday, May 20, 2016**.

11

**IT IS SO ORDERED.**


Dated this 28th day of April, 2016, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge